UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PERRY STEVEN SPREEMAN,

                Plaintiff,                    CIVIL ACTION NO. 12-12641

        v.                         DISTRICT JUDGE GERALD E. ROSEN

                                   MAGISTRATE JUDGE MARK A. RANDON

COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.

_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT (DKT. NOS. 10, 11)**

      Plaintiff Perry Steven Spreeman challenges the Commissioner of Social Security's ("the Commissioner") final denial of his benefits application.  Cross motions for summary judgment are pending (Dkt. Nos. 10, 11).  Chief Judge Gerald E. Rosen referred the motions to this Magistrate Judge for a Report and Recommendation (Dkt. No. 2).

**I.**      **RECOMMENDATION**

      Because substantial evidence supports the Administrative Law Judge's ("ALJ") decision, this Magistrate Judge **RECOMMENDS** that Plaintiff's motion for summary judgment be **DENIED**, the Commissioner's motion for summary judgment be **GRANTED**, and the Commissioner's findings be **AFFIRMED**.

**II.**      **DISCUSSION**

      *A.*      *Framework for Disability Determinations*

      Under the Social Security Act, (the "Act") Disability Insurance Benefits and Supplemental Security Income are available only for those who have a "disability."  *See Colvin*

-1-

*v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability," in relevant part, as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.

Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that Plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*See* 20 C.F.R. §§ 404.1520, 416.920; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps . . . . If the analysis reaches the fifth step without a finding that the claimant is disabled, the burden transfers to the [Commissioner]." *Preslar v. Sec'y of HHS*, 14 F.3d 1107, 1110 (6th Cir. 1994).

**B.    Standard of Review**

This Court has jurisdiction to review the Commissioner's final administrative decision

pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited such that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal quotation marks omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses" (internal quotation marks omitted)). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted); *see also Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted) (explaining that if the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion"); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts" (internal quotation marks omitted)).

When reviewing the Commissioner's factual findings for substantial evidence, this Court is limited to an examination of the record and must consider that record as a whole.  *See Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007); *Wyatt v. Sec'y of HHS*, 974 F.2d 680, 683 (6th Cir. 1992). The Court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston*, 245 F.3d at 535.  There is no requirement, however, that either the ALJ or this Court discuss every piece of evidence in the administrative record.  *See*

-3-

*Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party" (internal quotation marks omitted)).  Further, this Court does "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility."  *Bass*, 499 F.3d at 509; *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant").

## III.   REPORT

### A.   *Administrative Proceedings*

Plaintiff applied for disability and disability insurance benefits on October 8, 2008, alleging he became disabled on June 30, 2008 (Tr. 17).  After the Commissioner initially denied Plaintiff's application, he appeared with counsel for a hearing before ALJ Beth J. Contorer, who considered the case *de novo*.  In a written decision, the ALJ found Plaintiff was not disabled (Tr. 17-24).  Plaintiff requested an Appeals Council review (Tr. 11).  On May 4, 2012, the ALJ's findings became the Commissioner's final administrative decision when the Appeals Council declined further review (Tr. 1-3).

### B.   *ALJ Findings*

Plaintiff was 51 years old on his disability onset date in June of 2008 (Tr. 22).  He has a high school diploma and past relevant work as an assembler, Hi-Lo (forklift) operator, and auditor (Tr. 22, 38).  The ALJ applied the five-step disability analysis to Plaintiff's claim and found at step one that he had not engaged in substantial gainful activity since his disability onset date of June 30, 2008 (Tr. 19).

At step two, the ALJ found that Plaintiff had the following "severe" impairment: degenerative disc disease[1] (Tr. 20).

At step three, the ALJ found no evidence that Plaintiff's impairment met or medically equaled one of the listings in the regulations (Tr. 28).

Between steps three and four, the ALJ found that Plaintiff had the Residual Functional Capacity ("RFC") to perform:

> a reduced range of light work[.]  Specifically, [Plaintiff] can: lift/carry 20 pounds occasionally and 10 pounds frequently; sit for six of eight and stand or walk for six of eight hours in a workday with a sit/stand option; perform all postural activities occasionally, except [he can] frequently kneel and crawl, and never climb ladders; occasionally reach overhead; push and pull occasionally; frequently operate foot pedals with the left lower extremity; and work in any environment, avoiding concentrated exposure to hazards, including vibration.

(Tr. 20).[2]

At step four, the ALJ found that Plaintiff could not perform his past relevant work as an assembler, a Hi-Lo operator, or an auditor (Tr. 22).

At step five, the ALJ found Plaintiff was not disabled, because he could perform a significant number of jobs available in the national economy, such as inspector, small products assembler, and sorter (Tr. 22-23).

C.      *Administrative Record*

---

[1]Degenerative disc disease is "...a degenerative condition that at times can produce pain from a damaged disc."  *See* http://www.spine-health.com/conditions/degenerative-disc-disease/what-degenerative-disc-disease (last visited June 3, 2013).

[2]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighting up to 10 pounds."  20 C.F.R. § 404.1567(b).

### 1.      Plaintiff's Hearing Testimony and Statements

Plaintiff has not been employed since he accepted a buy-out package from General Motors Corporation in 2008, ending his employment after approximately 32 years (Tr. 37-38).

Plaintiff testified that: (1) his back "goes out" at least once a month when he coughs, gags, or bends; (2) he has frequent "spikes of pain" in his back; and (3) he has spasms in his left leg (Tr. 41-42).  When his back "goes out," Plaintiff testified that he has to lie in bed with a heating pad for several days (Tr. 42).  Plaintiff was prescribed several medications, but he had not taken the pain medication in approximately a year and a half because of the side effects (Tr. 44).  Plaintiff was taking aspirin to manage his pain (Tr. 44-45).

Plaintiff testified that he can walk up to five blocks, stand for 20 to 30 minutes on cement (longer on carpet), and lift and carry 10 pounds (Tr. 49-50); he can also use his hands and fingers without difficulty, perform yard work, wash dishes, do laundry, cook, drive, and occasionally hunt (although he has to lie in bed for a couple of days after hunting) (Tr. 39-40, 49).  Plaintiff said he can only sit for 20 minutes before his back starts to hurt and he has to get up and move around (Tr. 40).  Finally, Plaintiff testified that it is painful to reach overhead (Tr. 49-50).

### 2.      Relevant Medical Evidence

Plaintiff has had back pain since 2006 (Tr. 191).  In January and February of 2008, Plaintiff's primary care physician – Dean Moscovic, D.O. – ordered MRIs of Plaintiff's lower back.  Based on the MRI results, Dr. Moscovic diagnosed Plaintiff with lumbar radiculopathy[3] and piriformis syndrome;[4] he referred Plaintiff to physical therapy (Tr. 159).  Dr. Moscovic did

---

[3]Lumbar radiculpathy is a compressed nerve in the lower back that causes pain, numbness, tingling or weakness along the course of the nerve.  *See* http://www.medicinenet.com/radiculopathy/article.htm (last visited July 3, 2013).

[4]"The piriformis syndrome is a condition in which the piriformis muscle irritates the sciatic nerve, causing pain in the buttocks and referring pain along the course of the sciatic

not identify any functional limitations associated with Plaintiff's diagnoses, and there is no evidence that Dr. Moscovic evaluated Plaintiff after his disability onset date.

Plaintiff attended physical therapy from January to March 2008 (Tr. 152-158, 161-190). The Limber Spine Discharge Report Form – dated March 26, 2008 – reported the following: (1) Plaintiff's condition improved 98% since January of 2008; (2) Plaintiff's pain only ranged from 0-1 on a scale of 0-10; and (3) Plaintiff did not experience any pain when he coughed or sneezed (Tr. 164-165).

In January of 2009, Todd T. Best, M.D., performed a Disability Determination Evaluation (Tr. 191-197). Dr. Best found that Plaintiff had the following functional limitations: he could only occasionally bend; could not stoop or squat; and, could only carry 20 pounds. Plaintiff also had a positive straight-leg raising test[5] (Tr. 195-196). Dr. Best did not find clinical evidence to support a need for Plaintiff to use a walking aid (Tr. 196). Based on his evaluation, Dr. Best diagnosed Plaintiff with chronic left lumbar radiculopathy (Tr. 193).

In February of 2009, Russell E. Holmes, M.D., performed a physical RFC assessment (Tr. 198-205). Dr. Holmes found that Plaintiff: (1) could occasionally lift 20 pounds, climb, balance, stoop, kneel, and crouch; (2) frequently lift 10 pounds and use a left foot pedal; (3) sit, stand and walk (with normal breaks) for approximately six hours in an eight-hour workday; and

---

nerve. This referred pain, called 'sciatica,' often goes down the back of the thigh and/or into the lower back. Patients generally complain of pain deep in the buttocks, which is made worse by sitting, climbing stairs, or performing squats." *See* http://www.rice.edu/~jenky/sports/piri.html (last visited July 3, 2013).

[5]A straight-leg raise test helps determine if an individual has nerve root irritation. *See* http://meded.ucsd.edu/clinicalmed/joints6.htm (last visited July 3, 2013). "The test is considered positive if pain is reproduced or increased in the lower back or leg." *See* http://www.dynamicchiropractic.com/mpacms/dc/article/php?id=51198 (last visited July 3, 2013).

(4) had limited ability to push and pull with his lower extremities. Dr. Holmes also found that Plaintiff should avoid concentrated exposure to hazards and vibration (Tr. 199-200, 202). Dr. Holmes diagnosed Plaintiff with chronic left lumbar radiculopathy, and found Plaintiff's statements regarding his symptoms and functional limitations partially credible (Tr. 200, 203).

### 3.   Vocational Expert

The ALJ asked a vocational expert ("VE") to assume a hypothetical individual of Plaintiff's education and work experience who could perform the full range of light work with the following limitations: (1) frequently kneel and crawl (but perform other postural positions occasionally); (2) operate foot pedals frequently with his left foot; and (3) occasionally reach overhead. In addition, the individual should avoid concentrated exposure to vibration and hazards, alternate between sitting and standing, and never climb ladders (Tr. 53-54). The VE testified that such an individual could not perform Plaintiff's past relevant work, but could perform work as an inspector, small products assembler, or sorter (Tr. 54).

The VE also testified that the individual would be precluded from employment if he was absent three days per month on a consistent basis (Tr. 54).

### D.   *Plaintiff's Claim of Error*

Plaintiff argues that the ALJ's hypothetical to the VE was inaccurate because it did not accurately portray his limitations. Specifically, Plaintiff argues that the ALJ did not consider that he can only sit and stand for 20 minutes; walk five blocks; and has trouble lifting, reaching, and bending. Plaintiff also says the ALJ did not consider the fact that he stays in bed for several days when his back "goes out," which would result in him missing work at least three days per month.

Where an ALJ poses a hypothetical question to a VE that fully and accurately incorporates Plaintiff's physical and mental limitations, the expert's testimony in response

constitutes substantial evidence to support a finding that Plaintiff is capable of performing a significant number of jobs in the national or regional economy, and thus is not disabled. *See Varley v. Sec'y of HHS*, 820 F.2d 777, 779 (6th Cir. 1987). Conversely, where the hypothetical does not accurately depict Plaintiff's limitations, the VE's testimony cannot support such a finding. "In forming a hypothetical question, to be posed to a vocational expert, the ALJ is required to incorporate only those limitations that he accepts as credible." *Bivens v. Astrue*, 2012 WL 4739325, at *6 (N.D. Ohio Oct. 3, 2012) (citing *Grieffeth v. Comm'r of Soc. Sec.*, 217 Fed. Appx. 425, 429 (6th Cir. 2007)).

Plaintiff's self-reported limitations may be used to establish disability in certain situations. *See Young v. Sec'y of HHS*, 925 F.2d 146, 151 (6th Cir. 1990); *see also Cagle v. Astrue*, 2012 WL 3201960, at *6 (E.D. Tenn. July 16, 2012):

> When a Plaintiff attempts to establish disability based on subjective complaints, [he] must provide objective medical evidence of an underlying medical condition that either confirms the severity of the alleged symptoms or indicates the condition reasonably could be expected to cause symptoms as severe as alleged. 20 C.F.R. § 404.1529; *see also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). If the objective medical evidence alone does not confirm the allegations of disabling symptoms, the ALJ must evaluate all other evidence to determine to what extent, if any, the alleged symptoms limit the claimant's work capacity. *See* 20 C.F.R. § 404.1529(c)(3). "The absence of sufficient objective medical evidence makes credibility a particularly relevant issue, and in such circumstances, this court will generally defer to the Commissioner's assessment when it is supported by an adequate basis." *Walters*, 127 F.3d at 531.

The ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 [sic] and SSRs 96-4p and 96-7p" (Tr. 20). The ALJ also considered Plaintiff's allegations and determined his statements concerning the intensity, persistence, and limiting effects of his condition were not credible to the extent they were inconsistent with the objective medical evidence (Tr. 21). Plaintiff contends that the

slightest action causes his back to "go out" and he has to lie in bed for several days (Tr. 41-42). But, nothing in the medical evidence supports the severity of his condition. Plaintiff also stated that he could only sit for 20 minutes (Tr. 40). However, he drove 30 minutes to the hearing without any reported problems (Tr. 36). Further, Dr. Holmes reported that Plaintiff's subjective statements regarding his symptoms and functional limitations were only partially credible (Tr. 203). Given the record evidence, the ALJ reasonably concluded that Plaintiff's statements about the severity of his limitations were not entirely credible, and she was not required to include these alleged limitations in the hypothetical to the VE.

In the absence of functional limitations from Plaintiff's treating-source (Dr. Moscovic), the ALJ gave significant weight to Dr. Holmes' assessment (Tr. 22). Further, Plaintiff did not receive any treatment from Dr. Moscovic between his alleged disability onset date in June of 2008 and the filing of his disability claim in October of 2008 (Tr. 22). While Dr. Holmes' determinations are not treating-source opinions, they "may be credited where they are supported by the record." *See Price v. Comm'r of Soc. Sec.*, 342 F.App'x 172, 177 (6th Cir. 2009). The ALJ gave consideration to Dr. Holmes assessment because it was consistent with the record as a whole (Tr. 22).

Plaintiff does not object to the ALJ's credibility determination or the weight given to Dr. Holmes' assessment.[6] Importantly, the ALJ's RFC determination contained all the functional

---

[6]Plaintiff implies that the ALJ erred in her application of the treating source rule; he refers to SSR 96-8, stating that an RFC must "always consider and address medical source opinions," alongside 20 C.F.R. § 404.1527(d)(2), emphasizing the proper weight to be given to treating source opinions (Dkt. No. 10 at 8-9 (CM/ECF)). But, Plaintiff fails to substantiate any such argument. Accordingly, this Magistrate Judge deems this argument waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to . . . put flesh on its bones.")

limitations identified in Dr. Holmes' assessment, including the ability to alternate between sitting and standing and occasionally reach overhead (Tr. 20).

The ALJ's decision should not be disturbed on appeal.

**IV.    CONCLUSION**

Because substantial evidence supports the ALJ's decision, this Magistrate Judge **RECOMMENDS** that Plaintiff's motion for summary judgment be **DENIED**, the Commissioner's motion for summary judgment be **GRANTED**, and the Commissioner's findings be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation.  *See McClanahan v. Comm'r Soc. Sec.*, 474 F.3d 830 (6th Cir. 2006); *Frontier*, 454 F.3d at 596-97. Objections are to be filed through the Case Management/Electronic Case Filing (CM/ECF) system or, if an appropriate exception applies, through the Clerk's Office.  *See* E.D. Mich. LR 5.1. A copy of any objections is to be served upon this Magistrate Judge but this does not constitute filing.  *See* E.D. Mich. LR 72.1(d)(2). Once an objection is filed, a response is due within fourteen (14) days of service, and a reply brief may be filed within seven (7) days of service of the response.  *See* E.D. Mich. LR 72.1(d)(3), (4).

s/Mark A. Randon
Mark A. Randon

United States Magistrate Judge

Dated:  July 10, 2013

*Certificate of Service*

    *I hereby certify that a copy of the foregoing document was mailed to the parties of record on this date, July 10, 2013, by electronic and/or ordinary mail.*

                        *s/Eddrey Butts*_____
                        *Case Manager for Magistrate Judge Mark A. Randon*